# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL HALL, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. <u>3:10-cv-00633-JPG-PMF</u> |
| MR THOMAS, *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter comes before the Court on the defendants' affirmative defense of failure to exhaust administrative remedies. Also before the Court is the defendants' (Doc. 33) motion for summary judgment and the plaintiff's response thereto (Docs. 35, 38). For the following reasons, it is recommended that the Court find that the plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit and grant the defendants' (Doc. 33) motion for summary judgment.

## I. FACTS

The plaintiff, Michael Hall, is presently an inmate at Pontiac Correctional Center ("Pontiac"), a correctional facility under the jurisdiction of the Illinois Department of Corrections ("IDOC"). Before his transfer to Pontiac, Hall was an inmate of Menard Correctional Center ("Menard), which is also a correctional facility under the jurisdiction of the IDOC. While incarcerated at Menard on May 26, 2010, Hall was moved from cell #447 to cell #403 at Menard, where he remained until June, 22 2010. *See* Doc. 33-1. Hall alleges that defendants Mr. Thomas (Internal Affairs), Sgt. Pickler, and C/O Reynolds conspired to place Hall in cell #403 as punishment for using profanity and threats against correctional officers.

1

According to Hall, cell #403 had inadequate ventilation, excessive heat, backed up sewage, and loose paint chips that would fall onto his food and face. Because of these conditions, Hall claims he could not adequately breathe. Hall states that he begged defendant Sgt. Best to be removed from cell #403, but his requests were refused. Hall believes the actions of all the defendants were racially motivated.

## II. PROCEDURAL HISTORY

Hall filed this lawsuit pursuant to 42 U.S.C. § 1983 on August 19, 2010, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1. The Court screened the complaint pursuant to its authority in 28 U.S.C. § 1915A on March 14, 2011, and construed the complaint as comprising of two separate counts: 1) civil conspiracy and 2) inhumane cell conditions. *See* Doc. 30. The defendants filed the instant (Doc. 33) motion for summary judgment regarding their affirmative defense of failure to exhaust administrative remedies on August 10, 2011. The Court held an evidentiary hearing regarding the defendant's affirmative defense on March 12, 2012. *See* Doc. 48.

## III. DISCUSSION

The Court will first summarize the applicable law and will then evaluate the relevant evidence regarding the defendants' exhaustion defense:

### A. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit

has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jursidiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### B. The Defendants' Motion for Summary Judgment (Doc. 33)

In their (Doc. 33) motion for summary judgment, the defendants argue that Hall failed to exhaust his administrative remedies because he did not comply with the IDOC's administrative process for prisoner grievances. *See* Doc. 33 at 4. As support, the defendants offer the affidavit of Jackie Miller, chairperson of the ARB. *See* Doc. 33-1. Miller attests that she searched the ARB records for grievances filed by Hall complaining about cell conditions and for relevant grievances relating to defendants Sgt. Best, Sgt. Pickler, C/O Reynolds, and Mr. Thomas. *See id*. at 3 ¶ 7. Miller states that she was unable to find any such grievances. *Id*. Further, Miller attests that she did locate a grievance from March 2011 related to defendants Sgt. Best and C/O Reynolds, but it contained unrelated allegations about being stripped naked on three dates outside the timeframe of the relevant allegations of this lawsuit. *See id*. at 3 ¶ 8. Miller noted that the March 2011 grievance "concerned issues beyond the timeframe from review …" *Id*.

Miller stated in the affidavit that she found a second grievance naming Sgt. Best and complaining about being stripped naked and dated October 24, 2010. *Id*. However, the second grievance was rejected for failing to contain the counselor's response at step one and the Grievance Officer and CAO response at step two. *See id.*

In response, Hall alleges, without specificity, that grievances continually go missing at Menard. *See* Doc. 35 at 1. In his objection to a previous Report and Recommendation on this issue, the plaintiff included copies of three grievances the he filed regarding the relevant time period of the allegations of this case. *See* Doc. 38 at 13, 16-18. The three grievances are summarized as follows:

1) Grievance dated July 27, 2010
    a. Subject: Cell conditions of cell #403.
    b. Counselor (Step one): Received 8/10/10. Responded 8/16/10. "Offender allowed to file law suit. Conditions are found to be acceptable."
    c. Filed (Step two): Allegedly lost.
    d. Final appeal (Step three): No record of grievance.

2) Grievance dated July 27, 2010
    a. Subject: Cell conditions of cell #403.
    b. Counselor (Step one): Received 8/10/10. Responded 8/16/10. "Placement is administrative decision."
    c. Filed (Step two): Allegedly lost.
    d. Final appeal (Step three): No record of grievance.

3) Grievance dated August 2, 2010
    a. Subject: Inhumane cell conditions.
    b. Counselor (Step one): Received 9/14/10. Responded 9/15/10. "Issue already addressed."
    c. Filed (Step two): Allegedly lost.
    d. Final appeal (Step three): No record of grievance.

The Court determined on January 18, 2012 that issues of fact existed as to whether Hall exhausted his administrative remedies and directed the clerk to set an evidentiary hearing pursuant to the law of this Circuit under *Pavey v. Conley*, 544 F.3d at 741-42. *See* Doc. 43.

### C. Hall's Testimony at the March 12, 2012, *Pavey* Evidentiary Hearing

The Court heard testimony at the March 12, 2012 evidentiary hearing from Hall. Hall began by stating that he submitted the above grievances to the Grievance Officer at Menard, Janet Cowan, "many times." He added that Ms. Cowan claimed in another case that she never received grievances from Hall, but he was able to demonstrate in that case that Ms. Cowan did, in fact, receive some of his grievances. Hall then accused correctional officers of destroying his grievances. He based this accusation on the assertion that he has lost mail on previous occasions after placing it in his cell door for correctional officers to pick up. Next, Hall accused Paula Rich at Pontiac of interfering with his legal mail and claimed it was the "same problem I was having at Menard." He then turned his attention back to grievances and stated, "When they receive grievances from me, sir, they throw them in the garbage." Hall continued by testifying that, while at Menard, he sent off 33 grievances to be copied, but no copies were made. He was then transferred, and the 33 grievances were apparently sent to the ARB by Menard prison officials. Hall indicated that the ARB only responded to a handful of the grievances and did not provide a response to the grievances at issue in this case. He then blamed the ARB for failing to listen to his complaints about the counselors at Menard.

The Court then began questioning Hall as to the three specific grievances related to this case, as outlined in PART III.B above. Regarding the July 27, 2010, grievances that counselor Barton received on August 10, 2010, Hall indicated that he gave the grievances directly to counselor Barton because he did not trust any correctional officers, but he then proceeded to testify that counselor Barton also destroys his grievances. Hall could not remember the date he gave the July 27 grievances to counselor Barton, but he did ultimately agree that it was likely the date indicated on the grievances; August 10. After waiting for a response at step one, Hall

testified that he emailed them to the Grievance Officer, but then changed course and stated that he sent it through the institutional mail. Hall then reiterated that he doesn't trust correctional officers because they destroy his mail and grievances. He did not go into any further specifics regarding the grievances at issue in this case. Rather, he continued to accuse the Grievance Officer, Janet Cowan, and correctional officers of destroying his grievances.

At the close of evidence, Hall indicated that he had additional evidence he would like to submit to the Court. After indicating that he didn't trust the e-filing system at Pontiac, the Court and opposing counsel agreed to let Hall mail a post-hearing evidentiary supplement to opposing counsel, which was ultimately filed on March 22, 2012.[1] *See* Doc. 50.

### D. Hall's Post-Hearing Evidentiary Supplement (Doc. 50)

The post-hearing evidentiary supplement submitted by Hall consists of, inter alia, a letter from the ARB dated April 27, 2011, concerning four grievances dated on or around March of 2011. The grievances considered and denied in the ARB letter submitted by Hall are not relevant to this lawsuit. Those grievances contained complaints that arose after this lawsuit began. The Seventh Circuit has strictly adhered to the principle that exhaustion must occur before suit is filed. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (providing that a prisoner cannot file suit and then exhaust his administrative remedies while suit is pending and citing *Perez*, 182 F.3d 532). Even if the grievances considered in the letter had been filed before the start of this litigation, the allegations contained therein do not appear to be relevant to the allegations in this lawsuit.

---

[1] The (Doc. 50) document that opposing counsel filed for the plaintiff was ultimately stricken because it contained highly inappropriate references to persons connected to this litigation. Regardless, the undersigned has considered the majority of the document's contents in the interests of fairness and judicial economy.

It should also be noted that the ARB letter indicates that many other grievances were sent to the ARB in addition to the four that were considered and denied. In response to the additional grievances that were received, the ARB stated that it did not appear that Hall followed the proper grievance procedure at the institution he was incarcerated because the grievances were never forwarded to the Grievance Office for review at step two. Additionally, the ARB noted that many of the grievances were outside the timeframe for review.

E. **Analysis**

After weighing all of the evidence, it appears more likely than not that Hall failed to exhaust his administrative remedies. The affidavit of Jackie Miller clearly demonstrates that none of Hall's grievances concerning the relevant allegations of this case made it to the third and final step of administrative review, the ARB. *See* Doc. 33-1 at 3 ¶ 7. The affidavit further suggest that Hall is either unaware of the proper grievance procedure or intentionally disregards it. *See id*. ¶ 8. The ARB letter that Hall submitted to the Court as a supplement backs up this conclusion. Both the affidavit and the letter from the ARB tend to show that Hall routinely files grievances beyond the proper timeframe for review and often fails to send his grievances to the Grievance Officer at step two of the process.

The Court finds that Hall's testimony at the March 12, 2012, evidentiary hearing lacked credibility and is entitled to little to no weight as evidence. The Court posed simple, fact-finding questions to Hall. Hall's demeanor and tone considered in conjunction with his evasive and paranoid responses to simple questions can only lead the Court to conclude that his testimony lacked truthfulness. Most notably, it seemed as if Hall accused every single prison official that he has ever encountered of engaging in some sort of conspiracy against him. This strikes the Court as overly paranoid and, quite possibly, delusional. Hall also contradicted himself many

times during his testimony. At several points in his testimony, Hall indicated that he places grievances in his cell door for correctional officers to place in the institutional mail. At other points in his testimony, Hall states that he never lets correctional officers handle his mail because they destroy it. Additionally, Hall indicates that counselors destroy his grievances yet all of the relevant grievances at issue in this case contain a counselor response. *See* Doc. 38 at 13, 16-18.

The Court is aware of the line of cases where it has been found that prison officials effectively made administrative remedies unavailable to a prisoner. Of particular importance here, the Seventh Circuit has found that a prisoner who placed an appeal of a grievance to the ARB in the mail, which was subsequently lost, exhausted his available administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). Here, Hall would urge the Court to find that he similarly exhausted his available administrative remedies when, according to his testimony, he placed his relevant grievances in the institutional mail but never received a response. However, this case differs from *Dole* in several important respects. In *Dole*, it was undisputed that the prisoner had given his timely-filed appeal to the guard to mail to the ARB. *See id*. at 808 (" … it was undisputed that *Dole* had given his complaint to the guard to mail to the ARB … "). It was also evident in *Dole* that the prisoner had followed proper grievance procedure at the institution. *See id*. at 811. Here, there is evidence that Hall routinely fails to follow proper grievance procedures, and the Court has found Hall's self-serving and unsubstantiated statements concerning the filing of his grievances, at step two, lack credibility.

The counselor responses on the grievances in question indicate that there were administrative remedies available to Hall. There is no indication, however, that Hall actually proceeded to step two of grievance process. Based on the evidence before the Court, it is more

likely than not that Hall failed to properly proceed to step two of the process with respect to the relevant grievances at issue here.

Hall asks this Court to consider another case that Hall filed in this District, *Hall v. Bendoff*, Case No. 10-cv-214-MJR-SCW (S.D.Ill., Nov. 18, 2011), where Magistrate Judge Williams recommended that the Court find that the defendants did not meet the their burden of proof regarding their affirmative defense that Hall failed to exhaust his administrative remedies. Hall, without much elaboration, urges the Court to essentially make the same findings in this case. On its face, however, this case concerns an entirely different set of facts and evidence to consider. The undersigned can only presume that Hall would also like this Court to consider the line of cases where it has been found that prison officials effectively made administrative remedies unavailable to a prisoner. The undersigned has already addressed this issue above.

It is recommended that the Court find that the defendants have demonstrated by a preponderance of the evidence that Hall failed to exhaust his available administrative remedies. Prisoners are required to follow all grievance rules established by the correctional authority. *See, e.g., Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. Any other approach would allow a prisoner to "exhaust" state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem-or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner. *See Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)."). From a policy perspective, this case serves as an example of a case that could render

the statutory exhaustion requirement of the PLRA a toothless scheme, as contemplated in *Pozo*. *See id*. If the prisoner in this case can escape the exhaustion requirement by claiming, without substantiation, that everyone is out to get him and destroys all of his grievances, then there would be nothing to stop every prisoner from similarly escaping the requirement of 42 U.S.C. § 1997e(a) with self-serving and unsubstantiated statements of their own.

## IV. RECOMMENDATION

For the forgoing reasons, it is recommended that the defendants' motion for summary judgment (Doc. 33) be granted[2] as follows:

1) It is recommended that the Court find that the defendants have proven, by a preponderance of the evidence, that the plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit.

2) It is recommended that defendants Mr. Thomas, Sgt. Pickler, C/O Reynolds, and Sgt. Best be dismissed from this lawsuit.

If this recommendation is adopted in its entirety, there will be no further issues requiring the Court's attention.

**SO RECOMMENDED.**

**DATED: April 3, 2012.**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court recognizes that Rule 56(a) of Federal Rules of Civil Procedure utilizes the issue of fact standard, and this order utilized the preponderance of evidence standard. In this District, however, a motion for summary judgment is the vehicle by which litigants raise the failure to exhaust administrative remedies affirmative defense, which must be proven by a preponderance of the evidence.